## MILLS v. WARNOCK. (No. 1848.)

(Court of Civil Appeals of Texas. El Paso. May 13, 1926. Rehearing Denied June 3, 1926.)

**1. Pleading ⬥248(3).**

Amended petition sets up new cause of action, unless it expresses substantially same contract as original petition.

**2. Pleading ⬥248(2).**

Tests in determining whether amended petition sets up new cause of action are: (1) Would recovery on original bar recovery on amended petition; (2) would same evidence support both; (3) is measure of damages same; (4) and are allegations of each subject to same defenses?

**3. Courts ⬥100(1)—Entry of judgment by Supreme Court as recommended by Commission of Appeals, whose opinion contradicted decisions of Supreme Court, will not be held to overrule those decisions, where opinion of Commission of Appeals was not expressly approved.**

Entry of judgment by Supreme Court in accordance with recommendation of Commission of Appeals, whose opinion in the case was contrary to prior opinions of Supreme Court, will not be held to overrule or modify those opinions, where opinion of Commission of Appeals was not expressly approved.

**4. Courts ⬥100(1)—Court of Civil Appeals will assume that rule for determining identity of causes ·of action continues as announced by Supreme Court until it expressly or by necessary implication overrules it.**

Court of Civil Appeals will assume rule announced by Supreme Court for determining identity of causes of action continues until Supreme Court itself expressly or by necessary implication overrules or modifies it and prescribes new test.

**5. Limitation of actions ⬥127(13)—Where plaintiff declared on contract made by defendant alone to employ him, and in amended petition declared on contract made by defendant and another, held, amended petition sets up new cause of action.**

Where plaintiff first declared upon contract made by one defendant alone to employ him to operate her farm, and in his amended petition declared upon a contract made by defendant and another to operate their farm, *held*, amended petition sets up new cause of action against which two-year statute of limitations runs until petition is filed.

Appeal from District Court, Pecos County; C. R. Sutton, Judge.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by R. M. Warnock against Mrs. Love Webb Mills and another. Judgment for plaintiff against named defendant who appeals. Reversed and rendered.

McKenzie & Loose, of El Paso, W. A. Wright, of San Angelo, and Howell Johnson, of Fort Stockton, for appellant.

Williams & Jackson, R. D. Blaydes, and Joe Montague, all of Fort Stockton, Brian Montague, of Del Rio, and Kemp & Nagle, of El Paso, for appellee.

HIGGINS, J. On February 19, 1923, appellee filed this suit against Mrs. Mills, the appellant, to recover $2,200, being 10 per cent. of the value of certain crops, alleged to be due him under a contract of employment.

In the petition the contract is thus stated:

"On or about the 1st day of October, 1920, the defendant being then and there the owner of a large farm near the city of Fort Stockton, in Pecos county, Tex., employed the plaintiff to manage and operate said farm for a term of 12 months, beginning October 1, 1920, and terminating October 1, 1921; that in consideration of the services to be performed by the *defendant* in his capacity as manager and foreman of said farm, the defendant then and there contracted and agreed to pay him for the term of said employment a salary of $300 per month, payable monthly as it accrued, and in addition thereto 10 per cent. of the value of all crops and produce to be raised on said place during said term."

The italicized word is a manifest clerical error. It will be treated as "plaintiff."

Payment of the monthly salary was admitted. It was alleged:

That crops of the value of $22,000 were raised upon the farm "whereby the defendant became liable and indebted to the plaintiff in the further sum of 10 per cent. thereof, to wit, $2,200."

"That during said term of 12 months, and at all other times, the plaintiff was in the employ of the defendant, he exercised his best efforts and skill to make said farm as productive as possible and as profitable as same could be made to the defendant, and devoted his entire time, skill, and energy in her behalf, and in every way complied with his agreement and obligations of employment to her; that said sum of $2,200 is long past due and unpaid, and, though often requested, the defendant has failed and refused, and does still fail and refuse, to pay the plaintiff said sum of money, or any part thereof, to his damage in said sum of $2,200, with interest thereon at 6 per cent. per annum from the 1st day of October, 1921."

On November 1, 1924, the plaintiff filed his first amended original petition, in which he joined Robert D. Webb as party defendant, and—

"In this connection alleges that said Robt. D. Webb, at all times hereinafter complained of, was part owner of the lands covered by the contract of employment hereinafter complained of, and further alleges that, as such part owner he is equally liable with his codefendant to plaintiff under the contract of employment hereinafter alleged.

"(2) That heretofore, to wit, on or about the 1st day of October, 1920, the defendants being then and there the owner of a large farm near the city of Fort Stockton, in Pecos county, Tex., employed the plaintiff to manage and operate said farm for a term of 12 months beginning October 1, 1920, and terminating October 1, 1921; that in consideration of the services to be performed by the plaintiff in his capacity as manager and foreman of said farm, the defendants then and there contracted and agreed to pay him for the term of said employment a salary of $300 per month, payable monthly as it accrues, and in addition thereto 10 per cent. of the value of all crops and produce to be raised on said place during said term."

Payment of the monthly salary was admitted, and the additional averments were the same as in the original petition, except that the word "defendant" was changed to "defendants." The evidence discloses the contract sued upon rested in parol. A peremptory instruction was given in favor of Webb upon the theory that as to him the suit was barred by the two-year statute of limitations. The case was submitted upon special issues, and upon the findings made the plaintiff recovered as prayed for.

[1] The first error assigned is to the refusal of a peremptory instruction requested by Mrs. Mills upon the theory that the amended petition set up a new cause of action which was barred by limitation.

In Railway Co. v. Scott, 75 Tex. 84, 12 S. W. 995, the original petition alleged a breach of an obligation on part of defendant to plaintiff to give him employment "for whatever length of time petitioner might desire to retain such employment." By amendment the obligation alleged was to give employment "for the period and term of the natural life of the plaintiff." It was held the amendment set up a new and different contract, and that the cause of action for the breach thereof was barred by limitation. Justice Henry, in passing upon the question, said:

"We think the amended petition sets up an essentially different contract from the one alleged in the original petition. The parties and the inducement, or consideration, are the same, but these things do not in either instance constitute the whole of the undertaking."

In Cotton v. Rand, 93 Tex. 7, 51 S. W. 838, several amended petitions were filed. In the amendment preceding the last the contract sued upon was thus stated:

"That about August, 1882, the said Frank B. Cotton, acting as trustee as aforesaid, and as agent for all parties interested in said two contracts, represented to plaintiff that he, Frank B. Cotton, was financially embarrassed; that he

could obtain no money from his associates at the time, and would not be able to do so until the patents were obtained for said mineral lands, and notified this plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso as he had theretofore done, and would not be able for a time to advance the sums of money that he had promised to advance by the terms of said contract, and then and there requested of plaintiff, as trustee and agent for all the parties thereto, that plaintiff should continue to act as agent at the aforesaid salary, and that plaintiff should raise the necessary funds, and agreed that the necessary funds should be raised to carry on the business by sales of property out of said Cotton addition, and, if necessary, by borrowing money, and agreed that plaintiff should be paid his salary out of said property when sold or as sales of the same should be made from time to time."

In the amended petition upon which the case was tried the terms of the contract were stated in this language:

"Plaintiff further says that about August, 1882, the said Frank B. Cotton, acting as trustee and agent as aforesaid for all the parties interested in said two contracts of April 17, 1880, and December 21, 1880, and so represented himself to be such trustee and agent, except for plaintiff, represented to plaintiff that he, Frank B. Cotton, was financially embarrassed, that he could obtain no money from his associates at that time, and informed and notified plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso, as he had theretofore done, and would not be able, for a time, at least, to advance the sums of money he had promised to advance by the terms of said contract, and then and there requested of plaintiff, as trustee and agent for his said associates, as well as for all the parties as aforesaid, that he, plaintiff, should continue to act as agent at the aforesaid salary, but that plaintiff should raise the necessary funds, and agreed that the necessary funds should be raised to carry on the business by sales of property out of said Cotton addition, and, if necessary, by borrowing money, and agreed that plaintiff should be paid his salary, then accrued or which might thereafter accrue, out of said property when sold, or as sales thereof should be made from time to time, *it being understood that there was no, or but nominal, need for an agent for said mineral lands after the first year as aforesaid, to all of which plaintiff assented.*" (Italics ours.)

In passing upon the question of limitation, Chief Justice Gaines said:

"According to the rule which was applied in the case of the East Line & Red River Railway Co. v. Scott, 75 Tex. 84 [12 S. W. 995], if the contract alleged in either of the amended petitions is different in its material terms from that averred in the original, such amendment states a new cause of action, as to which the operation of the statute is not suspended until such amended petition was filed. The contract sued upon is stated in each of the amendments in somewhat different language from that employed in the original, but it may be doubted whether either of them, except the last, states

a contract different in any essential particular from that first alleged. As to the last, however, we are clearly of opinion that it contains an averment of a stipulation not inserted in the allegations of the terms of the contract as they appear in any of the former petitions, and that the stipulation so averred changes the contract in a most important particular. The additional averment referred to is as follows: 'It being understood that there was no, or but nominal, need for an agent for said mineral lands after the first year as aforesaid, to all of which plaintiff assented.' Now it is to be remembered that Cotton was trustee both of the mineral lands and of the Cotton addition, and, under the first contract entered into between him and Rand, the latter was employed for the term of one year to act as agent of both enterprises. It is to be presumed that the language just quoted was inserted in the last amended petition for a purpose, and we think that purpose was to aver, in effect, that while under the original contract the agency extended to both enterprises, under the new contract, the real substantial agency was to extend to the Cotton addition only, and such, we think, is the effect of the stipulation as averred. *The two enterprises were distinct and the parties at interest in the one were not all interested in the other and vice versa; therefore, a contract to act as agent of both is quite different from one to act as agent for but one,* which the stipulation, as averred, means, if it means anything. We conclude that the amended petition upon which the case was tried averred quite a different contract from that averred in the original petition or in any one of the previous amendments thereto, and that therefore the statute of limitations, which was set in operation by the contracts entered into by the plaintiff with Coit and Abney in March, 1892, continued to run until the filing of that last amendment in May, 1898." (Italics ours.)

The doctrine of these cases was also applied by Judge Brown in Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, where he said:

"If the facts alleged in the sixth amended petition do not express substantially the same contract as that set up in the original petition, then the judgment of the court sustaining the exception must be affirmed. It is not sufficient that the causes of action be similar in their nature, but they must be essentially identical. Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same in each case; (4) are the allegations of each subject to the same defenses?"

In that case the suit originally was based upon an express contract between defendant and a certain lumber company, to whose rights and property plaintiff succeeded, to protect the lumber company's property from fire. A breach of such contract was alleged, and loss by fire on account of defendant's failure to furnish sufficient water pressure as agreed. After the expiration of limita-

tions, an amendment was filed, which abandoned all reference to the express contract, and alleged facts tending to impose a duty on defendant, by implication of law, to exercise ordinary care to supply sufficient water to protect the premises from fire, and alleged that, by reason of defendant's negligent failure to supply sufficient water, plaintiff was damaged. It was held that the amended petition did not meet the second and fourth tests and presented a new cause of action. On the other hand, Judge Brown's opinion was reviewed by the Commission of Appeals, in Fuller v. El Paso Times Co., 236 S. W. 455, and it was there held that the amendment did not state a new cause of action when tested by the rule prescribed by Judge Brown. Prior to the analysis of the pleadings in the Fuller Case, Justice Powell said:

"It is only essential that the amended pleading, upon which the trial was had, was not substantially different from some portion of the former pleading. If each of the amended petitions herein contained, even as part of the cause of action therein asserted, substantially similar allegations, there was no new cause of action. This is well settled by our Supreme Court in the case of Bigham v. Talbot, 63 Tex. 271."

After analyzing the pleadings, it was held that the amendment in the Fuller Case met the test prescribed in Phœnix Lumber Co. v. Houston Water Co. Justice Powell said further:

"We think what we have said shows that the Court of Civil Appeals erred in holding that a new cause of action was set up herein, but, in addition to what has already been said, we have certain other views in mind which convince us that no new cause of action was set up in this case. All will admit that this action, as shown by all the pleadings, grew out of the very same contract which was made on December 1, 1910, by way of renewal of the very same written contract of date May 30, 1910, with some verbal emendations. Each pleading declared upon the very same transactions, and the only possible alleged differences, if any there were, relate to the terms and effect of the contract. We think it well settled that such differences do not constitute the amended pleadings a new cause of action. * * *

"Again, there is another line of authority in Texas which strongly indicates that the statute of limitation cannot enter to outlaw a cause of action where, in the amended pleading, the pleader is evidently pleading the same transaction, and when the new pleading includes parts of the contract as it was originally pleaded. In such a case the identity of the contract is not lost, and the opposite party is put sufficiently on notice of the basis of the suit. * * *

"Under the authorities last cited, the amended pleadings in the instant case certainly do not set up a new cause of action. To paraphrase the language of the court in the case last quoted, the pleadings under consideration in the case at bar all allege the same cause of action, for they allege the same contract, made at the same time and place, terminated in the

same way, and resulting in substantially, if not exactly, the same damages. There was only one renewal, that of December 1, 1910, of the one and only written contract which ever existed between the parties. Certainly all the pleadings notified the opposite parties of the exact contract which was the basis of the action. We are thoroughly convinced that these pleadings must have been much more materially different from each other than they were before it could be held that the last one set up a new cause of action. * * *

"Under any and all of the authorities we have reviewed upon any of the theories discussed, we are convinced that no new cause of action has been pleaded herein, and that Fuller's rights should not be barred by the statute of limitation. He commenced this action in two or three months after his contract had been terminated, and his attorneys never failed in any pleading to identify the very contract sued upon. Under those circumstances, and bearing that fact always in mind, we cannot agree that a plea, so largely of a technical nature, should be permitted to deprive him of his rights and thereby work a very great injustice. * * *."

We are unable to reconcile these quotations with the opinions of Judges Henry, Gaines, and Brown in the three cases first cited. In those cases the amendments declared upon "the very same transactions" and the difference related "to the terms and effect of the contract"; they included "parts of the contract as it was originally pleaded"; all of the pleadings in Railway v. Scott and Cotton v. Rand "notified the opposite parties of the exact contract which was the basis of the action." In Railway v. Scott the amendment simply changed the term for which employment was to be given. In Cotton v. Rand the amendment named Rand as the agent for one enterprise, whereas the previous pleading designated him as agent for two enterprises. Yet it held that these changes in the terms of the contracts, as originally pleaded, were so material as to constitute a different contract from that previously declared upon and set up a new cause of action which was barred by limitation.

If the quotations from the opinion in the Fuller Case are to be regarded as overruling or modifying the decisions in the other three cases, then the amendment in the present case did not set up a new cause of action. Of this there can be no doubt.

[2] If the opinion in the Fuller Case had been expressly approved by the Supreme Court, we would be bound to regard it as expressing the latest view of that court in determining the identity of a cause of action set up in an amended pleading as compared with the one previously pleaded. But such opinion was not so approved. We do not know upon what theory the Supreme Court acted in entering the judgment in the Fuller Case recommended by the Commission of Appeals. It may have acted upon the ruling of the commission that the amendment did

not set up a new cause of action when tested by the rule announced in Phœnix Lumber Co. v. Houston Water Co., or upon the view of the commission as expressed in the quotations from its opinion.

[3] In this situation this court would not be warranted in assuming that the Supreme Court intended to overrule or modify the decisions in the three cases first cited. We must assume that the rule announced in those cases is still in law in this state until the Supreme Court itself, expressly or by necessary implication, shall overrule or modify the same, and prescribe a new test for determining the identity of causes of action.

[4] This being the case, it seems to us that the case at bar is much stronger than Railway v. Scott, in support of the view that the amended petition set up a new cause of action. It is strikingly similar to Cotton v. Rand. In that case an agency contract for two enterprises was originally pleaded. The enterprises related to different properties owned by different people, though the defendant Cotton, for himself and as trustee for others, was interested in both. Under the contract as originally pleaded, the agency extended to both enterprises; under the amendment it extended to only one. Judge Gaines held that a contract to act as agent for both of the enterprises was quite different from a contract to act as agent for but one, and as to the contract last pleaded limitation ran until the amendment was filed in which it was pleaded.

[5] In the case at bar the plaintiff first declared upon a contract made by Mrs. Mills alone, whereby she employed him to manage and operate a farm owned by her, by which contract Mrs. Mills expressly agreed to pay the stipulated compensation. In the amended petition the plaintiff declared upon a contract made by Mrs. Wills and Webb to manage and operate a farm owned by them, by which contract Mrs. Mills and Webb expressly agreed to pay the stipulated compensation. This presents the reverse of the change in the contract pleaded in Cotton v. Rand, and if the change in the terms of the contract pleaded in that case set up a different cause of action, then we can see no reason why, in the present case, the same conclusion would not follow. The change in the contract relates, not to any matter of form, nor was it the correction of a misdescription. It relates to the substance and "changes the contract in a most important particular." We are of the opinion the plea of limitation was well taken.

This renders unnecessary a consideration of the other assignments.

Justice WALTHALL was absent and did not participate in the decision of this case.
Reversed and rendered.